**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

RYAN WEDEBRAND,

        Petitioner,

vs.

JOHN AULT,

        Defendant.

No. C04-4055-MWB

**REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF
HABEAS CORPUS**

---

*TABLE OF CONTENTS*

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.    *PROCEDURAL HISTORY IN STATE COURT* . . . . . . . . . . . . . . . . . . . . *3*

III.   *EXHAUSTION AND PROCEDURAL DEFAULT* . . . . . . . . . . . . . . . . . *18*

IV.   *ANALYSIS ON THE MERITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*

     *A.*     *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21*

     *B.*     *Relevant Facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23*

     *C.*     *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *32*

V.     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *36*

## I. INTRODUCTION

This matter is before the court on a petition for writ of *habeas corpus* filed by the petitioner Ryan Wedebrand. The Iowa Court of Appeals summarized the underlying facts of Wedebrand's case as follows:

> Ryan Wedebrand was charged with first-degree murder and first-degree kidnapping in the shooting death of Gregory "Sky" Erickson. Under the State's theory, Erickson was kidnapped and murdered by members of the Los Krazy Boyz, an Estherville gang, over a disputed drug debt.
>
> According to the State's evidence, Luis Lua and others assaulted and abducted Erickson in Spencer on June 6, 1997. Although not present at the time Erickson was abducted, Wedebrand joined Lua and others near Estherville, Iowa, later that evening. There, Wedebrand got into a car driven by Ramiro Astello along with Lua and Erickson, whose head was covered with a pillowcase. From Estherville Ramiro Astello drove the group to a rural Iowa location where Erickson was bound, gagged, and repeatedly beaten by Wedebrand, Lua, and Juan and Ramiro Astello. Although Lua pointed a gun at Erickson, he did not shoot Erickson following a "not here" admonition by another member of the group. Erickson was then placed in the trunk of the car, covered by a garbage bag, and driven to an abandoned Minnesota farmstead where he was shot to death by Lua. While in route to Minnesota, Lua told Wedebrand and the others he had enough ammunition for each of them to shoot Erickson. Wedebrand shot Erickson in the hip after Lua fatally shot Erickson in the head. Although others attempted to shoot Erickson after Wedebrand, Lua's gun jammed, and they were unsuccessful.

*State v. Wedebrand*, 602 N.W.2d 186, 187 (Iowa Ct. App. 1999) ("*Wedebrand I*"). These factual findings of the Iowa Court of Appeals are presumed to be correct for purposes of

this action,[1] and the court finds nothing in the record to call the Iowa court's factual findings into question.

This action was commenced on June 24, 2004, when the petitioner Ryan Wedebrand ("Wedebrand") filed a petition for writ of *habeas corpus* in this court under 28 U.S.C. § 2254. (Doc. No. 1)  The respondent John F. Ault ("Ault" or "the State") filed an Answer on August 30, 2004. (Doc. No. 10)  Wedebrand filed a brief in support of his petition on October 19, 2004. (Doc. No. 17)  Ault filed a responsive brief on November 24, 2004. (Doc. No. 19)  Wedebrand filed a reply brief on December 15, 2004. (Doc. No. 20)

On October 6, 2005, the court heard oral arguments on the petition.  Wedebrand appeared by telephone with his attorney, Michael Jon Jacobsma.  Ault was represented at the hearing by Iowa Assistant Attorney General Mary Ellen Tabor.  After the hearing, on October 7, 2005, Wedebrand filed a supplemental reply brief. (Doc. No. 25)

The court now finds the petition to be fully submitted, and turns to consideration of its merits.

## II. PROCEDURAL HISTORY IN STATE COURT

In a trial information filed on June 27, 1997, Wedebrand was charged in the Iowa District Court for Clay County with first-degree kidnapping and conspiracy to commit kidnapping.  In a second trial information filed on October 14, 1997, Wedebrand was charged with first-degree murder.  The trial informations were consolidated for trial.

On February 18, 1998, a jury found Wedebrand guilty on the first-degree murder and first-degree kidnapping charges, and not guilty on the conspiracy to commit

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

kidnapping charge. Wedebrand was sentenced on each of the two counts of conviction to a mandatory sentence of life imprisonment with no possibility of parole.

Wedebrand filed a direct appeal, which was referred to the Iowa Court of Appeals. In the appeal, Wedebrand asserted the following two claims: (1) the district court abused its discretion in denying Wedebrand's motion for change of venue based on prejudicial pretrial publicity; and (2) the district court did not have territorial jurisdiction over the crimes charged because the alleged crimes took place in Minnesota and not in Iowa. *Wedebrand I*, 602 N.W.2d at 188-89. The Court of Appeals rejected both claims. On the change of venue issue, the court ruled as follows:

> We find the district court did not abuse its discretion in denying Wedebrand's motion for change of venue. While there was substantial pretrial publicity concerning these events and the defendant, the district court fairly characterized the resulting media coverage as factual, informative, and accurate.

*Wedebrand I*, 602 N.W.2d at 189. On the territorial jurisdiction issue, the court ruled as follows:

> Generally, jurisdiction necessary to prosecute a public offense rests in the courts of the state where the offense was committed. *State v. Liggins,* 524 N.W.2d 181, 184 (Iowa 1994). Territorial jurisdiction is an essential element of a crime which the state is required to prove beyond a reasonable doubt. *Id.* at 184-85.

> Iowa Code section 803 provides:
> 1. A person is subject to prosecution in this state for an offense which the person commits within or outside of this state, by the person's own conduct or that of another for which the person is accountable, if:
> > (a) the offense is committed either wholly or partly within this state.
> >
> > \* \* \*

2. An offense may be committed partly within this state if conduct which is an element of the offense or a result of which constitutes an element of the offense occurs within this state.

The gist of Wedebrand's jurisdictional argument is that Erickson was shot and died in Minnesota. He argues the remaining elements of premeditated murder, malice aforethought, and specific intent to kill, are not predicate conduct implicating Iowa's jurisdiction under sections 803.1 and 803.2.

As noted in Instruction 15, Wedebrand was charged with premeditated first-degree murder as an aider and abettor. A person who aids and abets another in the commission of a public offense is punishable as a principal. Iowa Code § 703.1. Aiding and abetting in a crime occurs when a person assents to or lends countenance and approval to another's criminal act either by active participation or by encouraging it in some manner prior to or at the time of commission. *State v. Lott,* 255 N.W.2d 105, 107 (Iowa 1977). It is essential that the aider and abettor have knowledge of the perpetrator's criminal activity prior to its commission. *State v. Vesey,* 241 N.W.2d 888, 891 (Iowa 1976).

If specific intent is an element of the offense charged, "a person may be convicted on a theory of aiding and abetting if the person participates with the requisite intent . . . or with the knowledge that the principal possesses the requisite intent." *Lott,* 255 N.W.2d at 109. Proof of the requisite intent or malice aforethought may be accomplished by inferences made from the acts and conduct of the defendant and the means used in doing the wrongful and injurious acts. *See State v. Olson,* 373 N.W.2d 135, 136-37 (Iowa 1985) (citations omitted); *State v. Nunn,* 356 N.W.2d 601, 603 (Iowa App. 1984).

We are unable to reconcile Wedebrand's argument with the plain language of sections 803.1 and 803.2. Section 803.1 expressly provides for prosecution of offenses committed partially within or outside of Iowa. As an alleged aider and abettor, Wedebrand was subject to prosecution in Iowa under

the "conduct . . . of another for which the person is accountable" language of section 803.1. Moreover, evidence of Wedebrand's presence, encouragement, and participation in Erickson's beating in Iowa is conduct from which the principal's specific intent to kill, malice aforethought, and Wedebrand's knowledge thereof may be inferred. Because Wedebrand can be held accountable for conduct in Iowa which constitutes an essential element of first-degree murder, Iowa's territorial jurisdiction to prosecute this offense was properly invoked.

*Wedebrand I*, 602 N.W.2d at 189-90.

Wedebrand filed an application for further review by the Iowa Supreme Court, raising the same two issues. The application was denied on October 29, 1999, and Procedendo was issued on November 17, 1999.

On March 22, 2000, Wedebrand filed a *pro se* application for post-conviction relief in Clay County District Court. In the application, he alleged his conviction should be overturned on the following grounds:

1. Jury Instruction # 15 violated petitioner's Due Process Rights under the 5th, 6th and 14th Amendments of the United States Constitution.
2. Petitioner's Appellate counsel was ineffective for not arguing that the testimony of Ben Alden was inconsistent with his prior deposition.
3. Petitioner's appellate counsel was ineffective for not arguing that more than one (1) of the jurors had personal acquaintance with the victim.
4. Petitioner's appellate counsel was ineffective for not preserving his two claims; namely, Territorial Jurisdiction and Change of Venue, for federal habeas review. That is to say, his issues were never argued under federal theory. Consequently, his Due Process rights under the 14th amendment of the U.S. Constitution have been abridged.

On March 8, 2001, Wedebrand, now represented by counsel, filed an amended application for post-conviction relief. In the amended application, he alleged the following grounds:

> A.     The conviction or sentence was in violation of the Constitution of the United States or the Constitution or laws of this state.
> B.     The Court was without jurisdiction to impose sentence.
> D.     There exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.

On November 7, 2001, Wedebrand filed a second amended application for post-conviction relief in which he alleged the same grounds he had alleged in the amended application.

After a hearing held on March 15, 2002, Judge Don E. Courtney issued a lengthy ruling in which he denied Wedebrand's application. In his ruling, Judge Courtney addressed more than eleven separate grounds for relief raised by Wedebrand during the PCR hearing.

Wedebrand's first ground for relief was described by Judge Courtney as follows:

> Wedebrand argues that the State violated his Fifth Amendment right to be free from multiple punishments of the same offense. Wedebrand asserts that conspiracy to kidnap is a lesser included offense of aiding and abetting kidnapping and that the State violated his constitutional right to be free from double jeopardy when it charged him with both offenses. Wedebrand asserts further that his trial counsel and appellate counsel were ineffective for failing to raise this issue on a post-trial motion.

Judge Courtney ruled the double jeopardy clause of the Fifth Amendment does not apply where, as here, it is possible to commit the greater offense (aiding and abetting a kidnapping) without committing the lesser offense (conspiracy to kidnap). He also ruled that because this issue had no merit, Wedebrand's trial and appellate counsel were not ineffective in failing to raise the issue.

Wedebrand asserted there were errors in several of the jury instructions, and his trial and appellate counsel were ineffective in not objecting to these instructions. Judge Courtney ruled against Wedebrand on these assertions.

Wedebrand argued he did not have a fair and impartial jury because two of the jurors were biased against him and should have been dismissed when challenged for cause. He also argued his trial counsel was ineffective in not using his strikes to dismiss the two jurors. Judge Courtney ruled the trial judge did not abuse his discretion in deciding the two jurors in question could be fair and impartial, and Wedebrand's trial lawyer was not ineffective in failing to strike them.

Wedebrand argued the trial judge erred in not changing the venue of the trial. Judge Courtney ruled Wedebrand was not prejudiced by pretrial publicity, and there was no error in the trial judge's decision not to change venue.

Wedebrand argued he was unfairly prejudiced by the admission of gang evidence at trial, the admission of the evidence violated his right of free association under the First Amendment to the Constitution, and his trial and appellate counsel were ineffective in their efforts to challenge this evidence. Judge Courtney ruled the evidence was relevant and properly admitted and did not violate Wedebrand's right of free association. He also ruled Wedebrand's trial and appellate counsel were not ineffective in their efforts to challenge this evidence.

Wedebrand argued it was cruel and unusual punishment for him to be sentenced to life in prison without the possibility of parole for being convicted as an aider and abettor. Judge Courtney ruled this argument had no merit.

Wedebrand argued he was not advised adequately about the consequences of rejecting a federal plea offer, and his state-appointed lawyer and federal-appointed lawyer therefore were ineffective. Judge Courtney summarized the evidence on this issue as follows:

Petitioner's Exhibit 5 is a letter sent by the United States Attorney's office addressed to Leon Spies, Wedebrand's federal-appointed counsel. Mr. Spies testified in the post conviction application hearing that he faxed a copy of the letter to Wedebrand on the same day that he received it from the United States Attorney. The third paragraph of that letter provides:

> As we discussed, if this matter is referred back to the state authorities for prosecution, there will be no limitation upon the charges to be pursued by those authorities. In other words, it is my expectation that your client will face not only kidnapping charges but felony murder and other charges in the state proceeding. Of course, as we have previously discussed, the county attorneys can proceed directly against your client as an adult in state court.

Petitioner's Exhibit 9 is a letter dated August 7, 1997. The letter was sent from Leon Spies, federal defense counsel, to Wedebrand. In that correspondence, Mr. Spies asks Wedebrand to review the attached letter from the County Attorneys in Emmet and Clay Counties so that the two of them (Wedebrand and Spies) could discuss it when they met later. Petitioner's Exhibit 10 is a letter dated August 6, 1997. The letter was addressed to Mr. Spies and Mr. Martin and it was signed by Michael L. Zenor, the Clay County Attorney, and Richard Meyer, the Emmet County Assistant Attorney. The date and signatures on the correspondence seem to corroborate the assertion that the mention of an attached letter in Exhibit 9 is referring directly to the letter in Exhibit 10. The second sentence in the first paragraph of Petitioner's Exhibit 10 provides in pertinent part:

> We understand that there has been a plea offer made to your client by the U.S. Attorney's office. That offer is as follows:
>
> 1. An adjusted sentencing guideline of 360 months to life imprisonment, with no

departure below 360 months. Any sentence other than life may be reduced by 15% for good time served.

2.  Your client would cooperate and testify truthfully in order to receive the sentencing guideline range.

3.  Your client would waive further juvenile proceedings, and agree to be transferred to adult status, and prosecuted as an adult.

The second to the last paragraph in Petitioner's Exhibit 10 provides:

We are in agreement that each one of the juveniles deserves a life sentence because of their involvement in the shooting of Sky Erickson. Therefore, there will be no plea offer of less than one Class A felony, without possibility of parole.

Judge Courtney ruled on this issue as follows:

The court finds that the Petitioner's Exhibits 5, 9, and 10 indicate that Wedebrand was advised of the options that he was faced with in both the state and federal court forums. Mr. Spies indicated at the post conviction application hearing that he had followed up the letter marked as Petitioner's Exhibit 9 with a meeting with Wedebrand in which they discussed the legal options. The record indicates that at the very least, Wedebrand was informed of the sentencing possibilities for the crimes that he was charged.

Wedebrand argues that he was not provided with adequate advice regarding Iowa's felony murder rule. Wedebrand claims that proof of inadequate advice lies in the fact that he had a limited defense to a very strong case against him. Wedebrand claims he was not properly advised, yet he has not presented any evidence to show the Court that he was not informed of the charges against him. In order to meet this burden, Wedebrand must present credible, non-conclusory

10

evidence that he would have taken the plea offer had he been properly advised.

Wedebrand seems to suggest that because he received a greater sentence than what he would have received in federal court, the Court must conclude that he was not properly advised of the crimes for which he was charged. However, the Court finds that Wedebrand has not presented substantial evidence to overcome his burden of showing that Mr. Spies did not adequately advise him of the offenses for which he was charged. The exhibits provided above indicate that Attorney Spies sent Wedebrand information about the state and federal charges. The exhibits also indicate that Attorney Spies met with Wedebrand to discuss the information about the plea offer. Wedebrand does not argue in his post conviction application that Attorney Spies lied to him about the pending charges nor does he argue that Attorney Spies failed to meet with him after sending the letters. Thus, it is only reasonable to believe that Wedebrand was adequately advised about the felony murder rule and the other offenses charged.

Judge Courtney held Wedebrand "was made aware of the law for the offenses for which he was charged," and "Wedebrand was not prejudiced by the advice that he received."

Wedebrand next argued his trial counsel erred by withdrawing his motion to transfer the case to juvenile court. Judge Courtney found there was no chance that the case would have been removed to juvenile court, and Wedebrand's attorney was not ineffective in failing to pursue this issue.

Wedebrand argued he should have been granted a new trial to present the testimony of Luis Lua. Wedebrand claimed that because his trial attorney had made a tactical decision not to call Luis Lua as a witness at trial, Lua's testimony constituted "newly-discovered" evidence. Judge Courtney found this argument to be without merit, and further held Wedebrand was not prejudiced by the absence of Lua's testimony.

Wedebrand argued he was unfairly prejudiced by the video and photographic evidence that was admitted during trial, and his trial and appellate counsel were ineffective

in their efforts to contest the admission of this evidence. Judge Courtney found the video and photographic evidence was relevant and its probative weight outweighed any undue prejudice it might have created. He further found Wedebrand's attorneys were not ineffective in their efforts to challenge the evidence.

Wedebrand argued the State of Iowa was without territorial jurisdiction to prosecute him because the murder occurred in Minnesota. Judge Courtney ruled that because the abduction underlying the kidnapping and murder charges had occurred in Iowa, the trial court had jurisdiction over the offenses.

Finally, Wedebrand argued he was entitled to a new trial because after the trial, he learned that a Spencer, Iowa, police officer had interviewed the victim before he was kidnapped and murdered. Wedebrand claimed this was newly-discovered evidence that would have provided him with a defense at trial. Judge Courtney ruled Wedebrand had failed to meet his burden "of showing that this new evidence could have reasonably affected the outcome of his trial."

Wedebrand appealed Judge Courtney's ruling to the Iowa Supreme Court, raising the following issues:

> A. Counsel was Ineffective to Advise Ryan of the Terms and Consequences of the Federal Plea Offer as it Related to His Pending State Charges.
>
> B. Counsel was Ineffective for Failing to Appeal the Trial Court's Denial of Ryan's Motion in Limine Requesting That Any Evidence Relating to Ryan's Participation in the Los Krazy Boyz Gang Be Excluded from use at Trial.
>
> C. Counsel was Ineffective for Failing to Strike Biased Jurors Which Denied Ryan His Right to Trial by a Fair and Impartial Jury as Required by the Constitutions of Iowa and the United States.
>
> D. Counsel was Ineffective in Failing to File a Motion for Judgment of Acquittal Alleging That it Is Legally

Impossible for Ryan to be Convicted of Aiding and Abetting Kidnaping Given His Acquittal on Conspiracy to Commit Kidnaping.

E.  Counsel was Ineffective for Failing to Object to the Marshaling Instructions for First Degree Murder and Kidnaping.

F.  The Cumulative Effects of Counsel's Errors Were So Prejudicial That it Denied Him a Fair and Impartial Trial, as Well as Effective Assistance of Counsel

Wedebrand's appeal was referred to the Iowa Court of Appeals, and the Court of Appeals affirmed the decision of the PCR trial judge.

On Wedebrand's contention that he received ineffective assistance of counsel during plea negotiations, the Court of Appeals ruled as follows:

Wedebrand must show that he would have accepted the federal plea offer but for trial counsel's erroneous advice. *See Engelen v. United States,* 68 F.3d 238, 241 (8th Cir. 1995). In analyzing whether a person would have accepted a plea offer, we apply a subjective analysis. *Wanatee v. Ault,* 259 F.3d 700, 704 (8th Cir. 2001). A claimant must show more than nonconclusory evidence that he would have agreed to the plea bargain if properly advised. *Engelen,* 68 F.3d at 241.

Wedebrand has failed to show he did not receive proper advice prior to rejecting the federal plea offer. The letters from federal and state prosecutors, outlined above, show Wedebrand was informed he could be charged as an adult in state court, that he could be facing a life sentence without parole, and that he could be charged with murder. Wedebrand received copies of all of these letters. In addition, his federal-appointed counsel testified he discussed these matters with Wedebrand. On appeal, Wedebrand focuses on whether he received advice from his state-appointed counsel, ignoring the fact he was fully advised from other sources. Wedebrand's state-appointed counsel testified his federal-appointed counsel was acting as lead counsel in the federal plea negotiations. Wedebrand's state-appointed counsel had several conversations

with his federal-appointed counsel and was aware his federal-appointed counsel was advising Wedebrand in regard to the federal plea offer. We determine Wedebrand has failed to show he received ineffective assistance from his state-appointed counsel in regard to the plea offer made by the United States Attorney.

*State v. Wedebrand*, 669 N.W.2d 262 (Table), 2003 WL 21543146 at *2 (Iowa Ct. App. July 10, 2003) ("*Wedebrand II*").

Wedebrand argued he received ineffective assistance from his appellate counsel because of counsel's failure to appeal the trial court's denial of his motion in limine relating to gang evidence. The Court of Appeals ruled this evidence was relevant, and the district court did not abuse its discretion in determining the evidence was admissible. Therefore, the court held Wedebrand did not receive ineffective assistance of counsel when his appellate attorney did not raise this issue on appeal. *Wedebrand II* at *5.

Wedebrand next argued his trial counsel was ineffective for failing to strike biased jurors, denying him his right to a trial by a fair and impartial jury, as required by the Constitutions of Iowa and the United States. The Court of Appeals ruled as follows on this issue:

> During jury selection, two jurors initially expressed some reservations about whether they could be impartial but, after further discussions, stated they would try to be fair and impartial, and they were selected to be on the jury. Wedebrand contends the jurors' expressed bias against him necessitated their disqualification and trial counsel breached an essential duty by failing to request their removal from the panel.
>
> A juror may be removed from the jury panel if the juror has such a fixed opinion on the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant. *State v. Neuendorf,* 509 N.W.2d 743, 746 (Iowa 1993). The voir dire transcript shows that initially two jurors expressed some reservations about their ability to be impartial

in this case. The mere fact a prospective juror has a precon-
ceived notion of guilt does not per se disqualify the juror if the
record reflects the juror can lay aside that notion and render a
verdict based on evidence presented in court. *State v. Walters,*
426 N.W.2d 136, 138 (Iowa 1988). The transcript shows that
after further discussion, the jurors stated they could be fair and
impartial. Wedebrand has failed to show ineffective assistance
on this issue.

*Wedebrand II* at *3.

Wedebrand argued his trial counsel was ineffective in failing to file a motion for
judgment of acquittal alleging it was legally impossible for Wedebrand to be convicted of
aiding and abetting kidnaping after being acquitted on the conspiracy to commit kidnaping
charge. The Court of Appeals ruled as follows on this issue:

We first note conspiracy to commit a crime is not a
lesser-included offense of the predicate crime. *State v. Lies,*
566 N.W.2d 507, 509 (Iowa 1997). Furthermore, a criminal
defendant may not challenge a conviction on one count solely
because it may be inconsistent with an acquittal by the jury on
another count. *State v. Hernandez,* 538 N.W.2d 884, 889
(Iowa Ct. App. 1995). "Consistency in the verdict is not
necessary. Each count in an indictment is regarded as if it was
a separate indictment." *Id.* (quoting *Dunn v. United States,*
284 U.S. 390, 393, 52 S. Ct. 189, 190, 76 L. Ed. 356, 358-59
(1932)). We conclude Wedebrand has failed to show he
received ineffective assistance due to counsel's failure to file
a motion for judgment of acquittal.

*Wedebrand II* at *3.

Wedebrand argued his trial counsel was ineffective for failing to object to the
marshaling instructions for first degree murder and kidnapping. The Court of Appeals
responded to this argument as follows:

Wedebrand asserts the trial court's jury instructions on
murder and kidnapping improperly provided that the jury could
find either that Wedebrand had a specific intent or that he had
knowledge that others had such a specific intent. He asserts he

should not be convicted unless the State proved he shared in the principal's criminal intent. He also claims he could not be convicted of aiding and abetting unless the instructions required a finding that he had the specific intent to aid and assist in the commission of these crimes. We disagree.

Wedebrand was charged with aiding and abetting in the crimes of murder and kidnapping. Aiding and abetting in a crime occurs when a person assents to or lends countenance and approval to another's criminal act either by active participation or by encouraging it in some manner prior to or at the time of its commission. *Wedebrand,* 602 N.W.2d at 189. When a defendant is accused of aiding and abetting in the commission of a crime in which intent is an element, there must be substantial evidence the defendant either participated with the intent himself or with knowledge the principal had the required intent. *State v. Salkil,* 441 N.W.2d 386, 387 (Iowa Ct. App.1 989). The jury instructions which were given were supported by the law in Iowa, and defense counsel had no obligation to object.

\* \* \*

Wedebrand also claims the marshaling instruction for murder was improper because it provided that, "the Defendant or another with whom the Defendant was aiding and abetting acted with malice aforethought." Wedebrand contends the State should be required to prove he had malice aforethought, not merely that the principal had malice aforethought. A similar jury instruction was approved in *State v. Tangie,* 616 N.W.2d 564, 573 (Iowa 2000) ("The defendant acted with malice aforethought, or someone aided and abetted by the defendant acted with malice aforethought, with the knowledge of the defendant."). Defense counsel was not ineffective for failing to object to this instruction.

\* \* \*

Wedebrand claims the jury instruction on aiding and abetting should have included language which stated that participation must have been voluntary and not the result of fraud, duress, or coercion. His defense was that he

> participated in the crimes due to his fear of reprisals by other
> gang members.
>
>      Here, the jury was give a separate instruction on
> compulsion. We consider all of the instructions together, not
> piecemeal or in artificial isolation. *State v. Simpson,* 528
> N.W.2d 627, 632 (Iowa 1995). We conclude the instructions,
> taken as a whole, adequately explain the concept of coercion
> or compulsion. Trial counsel did not breach an essential duty
> by failing to object to the trial court's instructions on this
> issue.

*Wedebrand II* at *3-4.

Wedebrand's final argument was that the cumulative effect of his attorneys' errors

was so prejudicial, it denied him a fair trial and the effective assistance of counsel. The

Court of Appeals dealt with this issue by noting, "We have rejected Wedebrand's claims

of ineffective assistance of counsel and deny his claims of cumulative error. We also find

Wedebrand has failed to show he was prejudiced by counsels' alleged errors." Therefore,

the Iowa Court of Appeals affirmed the trial court's denial of Wedebrand's request for

postconviction relief. *Wedebrand II* at *5.

Wedebrand filed an application for further review by the Iowa Supreme Court, in

which he raised only two issues: "The Court of Appeals ignored the Iowa Code of

Professional Responsibility for Lawyers EC7-7 when it held that Wedebrand's state

appointed counsel was not ineffective for failing to advise Wedebrand regarding the terms

and consequences of the federal plea offer as it related to his pending state charges"; and

"The Iowa Court of Appeals failed to set forth specific factors which they considered in

deciding whether Wedebrand would have accepted the federal plea offer but for trial

counsel's erroneous advice." On September 19, 2003, the application was denied, and

Procedendo was issued on September 23, 2003.

Wedebrand initiated the present action in this court on June 24, 2004. He filed a

brief on October 19, 2004 (Doc. No. 17), and a supplemental brief on October 21, 2004

17

(Doc. No. 18). Ault filed a responsive brief on November 24, 2004 (Doc. No. 19). Wedebrand filed a reply brief on December 15, 2004 (Doc. No. 20). On October 7, 2005, Wedebrand filed a motion (Doc. No. 25) for leave to submit additional argument and authorities. The court has considered the additional argument and **grants** the motion.

### III. EXHAUSTION AND PROCEDURAL DEFAULT

The United States Supreme Court, in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999), held:

> Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.

*Id.*, 526 U.S. at 842-43, 119 S. Ct. at 1731 (citations omitted). Further, subsection 2254(c), 28 U.S.C. § 2254(c), provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Thus, the court must determine whether Wedebrand has exhausted all of his available state court remedies with respect to the issues he is raising in the petition for writ of *habeas corpus* he has filed in this court.

In his petition to this court, Wedebrand has raised the following issues:

1.  Ryan Wedebrand's state and federal appointed counsel were ineffective for failing to adequately advise him regarding the consequences of the plea proposal made by the federal and state authorities.

2.  Ryan Wedebrand's appellate counsel was ineffective for failing to appeal the trial court's denial of Wedebrand's Motion in Limine requesting that any evidence relating

18

to Wedebrand's participation in the Los Krazy Boyz Gang be excluded from the use at trial.

3.  Wedebrand's trial counsel was ineffective for failing to strike biased jurors which denied Wedebrand his right to a trial by fair and impartial jury. Wedebrand's appellate counsel was ineffective for failing to appeal this issue.

4.  Ryan Wedebrand's trial counsel was ineffective for failing to file a Motion for Judgement of Acquittal regarding his kidnaping and murder conviction after the jury rendered a verdict of not guilty on conspiracy to commit kidnaping.

5.  Wedebrand's trial counsel was ineffective for failing to object to the jury instructions for first degree murder and kidnaping first degree.

6.  The cumulative effects of Wedebrand's trial and appellate counsel's ineffectiveness were so prejudicial that it denied him a fair trial as well as effective assistance of counsel.

(Doc. No. 1)

Wedebrand did not raise any of these issues in his direct appeal.[2] In his state postconviction action, he raised all of these issues before the trial court and the Iowa Court of Appeals, but in his request for review by the Iowa Supreme Court, he raised only the first issue, relating to the effectiveness of his state and federal appointed counsel in advising him of the consequences of the plea proposal made by federal and state authorities.[3] Therefore, the court first must address the question of whether the remaining issues Wedebrand has raised in this action are unexhausted or procedurally defaulted.

---

[2]In his direct appeal, Wedebrand argued venue and territorial jurisdiction.

[3]The court considers the two issues Wedebrand raised in his request for further review (*see* page 18, *supra*) to be encompassed within this one issue.

Iowa law provides that "[a] party to an appeal decided by the court of appeals may, as a matter of right, file an application with the supreme court for further review." Iowa Code § 602.4102(4) (2003). The application must be filed within twenty days after the Court of Appeals renders its final decision. *Id.* Wedebrand filed an application for further review, but he only raised issues relating to advice of counsel regarding the proposed plea agreement. Wedebrand failed to avail himself of the opportunity for further review of the Court of Appeals's decision on his other claims. A necessary predicate to federal *habeas* review is the raising in the state courts, "by any available procedure, the question presented." 28 U.S.C. § 2254(c). Because Wedebrand failed to raise his other claims on appeal from the denial of PCR relief, those claims remain unexhausted. Further, because time to seek further review has passed, those claims are procedurally defaulted.

Wedebrand did not present the Iowa Supreme Court with the opportunity to pass upon, and potentially correct, the errors he asserts exist in the Court of Appeals's decision on his PCR appeal. Providing the State with such an opportunity is a necessary predicate to federal review. *Sillick v. Ault*, 358 F. Supp. 2d 738, 766 (N.D. Iowa 2005) (when a claim is denied by the Iowa Court of Appeals, the failure to raise the claim when seeking further review by the Iowa Supreme Court results in procedural default of the claim); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 1734, 144 L. Ed. 2d 1 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts[.]" (Emphasis added)); *see also Dixon v. Dormire*, 263 F.3d 774, 779-90 (8th Cir. 2001) (discretionary review by the Missouri Supreme Court required to avoid procedural default); *Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998) (state prisoner must fairly present constitutional claims to state court before seeking federal *habeas* review); *Hood v. Helling*, 141 F.3d 892, 896 (8th Cir. 1998) (citing *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)).

The court concludes Wedebrand has preserved for this court's review only the issue of whether his state and federal attorneys provided ineffective assistance of counsel in connection with their advice to him concerning the consequences of the state and federal plea proposals.

## IV. ANALYSIS ON THE MERITS

### A. Applicable Law

The court now turns to the merits of Wedebrand's claim that he received ineffective assistance of counsel in connection with his lawyers' advice to him during plea negotiations.

For a petitioner to prevail on an ineffective assistance of counsel claim, he ordinarily must satisfy the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the U.S. Supreme Court held that to prevail on a claim for ineffective assistance of counsel:

> *First,* the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second,* the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) (emphasis added).

Furthermore, in a habeas action, the petitioner must do more than satisfy the *Strickland* "performance" and "prejudice" tests. In addition, the habeas petitioner must show the decision of the state court on the issue "was either (1) 'contrary to . . . clearly

established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1)).

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of Supreme Court clearly-established precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520. Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the state court decision was not contrary to clearly established federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Thus, to prevail here, Wedebrand must show the Iowa courts either (1) reached a decision contrary to applicable Supreme Court precedents on a question of law; (2) correctly identified the applicable law, but then failed to apply the law reasonably to the facts of this case; or (3) made its decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Consideration of these questions requires some discussion of the facts underlying Wedebrand's claim that his trial and appellate counsel were ineffective during plea negotiations.

### B. Relevant Facts

In a trial information filed on June 27, 1997, Wedebrand was charged in the Iowa District Court for Clay County with first-degree kidnapping and conspiracy to commit kidnapping. Attorney Jon M. Martin was appointed to represent Wedebrand. On July 2, 1997, Wedebrand was charged in a Complaint filed in the United States District Court for

the Northern District of Iowa, 97 CR 3010 (Doc. No. 1), with murder and kidnapping. The federal charges were based on same facts as the state charges. On July 14, 1997, attorney Leon F. Spies was appointed to represent Wedebrand in federal court. On July 18, 1997, the United States Attorney filed an Information against Wedebrand charging him as a juvenile. In Count 1 of the Information, he was charged with kidnapping; in Count 2, he was charged with conspiracy to commit kidnapping; and in Count 3, he was charged with carrying a firearm during and in relation to crimes of violence and drug trafficking crimes.

Shortly after the federal prosecution was commenced, the federal and state prosecutors and Wedebrand's federal and state attorneys entered into joint plea negotiations. On July 17, 1997, Assistant U.S. Attorney Richard L. Murphy wrote a letter to Spies in which he stated, in relevant part, the following:

> This will confirm our conversation regarding the [Wedebrand] matter. As we discussed, our office is prepared to negotiate a resolution to this case which could offer your client an opportunity at less than mandatory life imprisonment. This letter is intended to outline the broad terms of such an agreement. However, this letter does not constitute a formal proposed agreement and any such formal plea proposal would be contained in a separate document.
>
> As we discussed, the bottom line of any negotiations in this case would be a plea to a charge or charges that would result in any agreed upon adjusted sentencing guideline range of 360 months to life imprisonment. Any plea agreement would require your client to cooperate and testify truthfully in order to obtain that sentencing guideline range. Your client's cooperation would be taken into consideration at the time of sentencing by determining where within that range he should be sentenced. There would be no departure below 360 months.
>
> We would likewise expect your client to agree to continue to be detained in federal custody without the need for

further detention hearings. Similarly, your client would agree to waive further juvenile proceedings and agree to be transferred to adult status and prosecuted as an adult.

If we were able to reach early agreement along the lines outlined above, I believe the County Attorneys in Emmet and Clay County would be willing to forego state prosecution. As we discussed, should the state pursue charges, your client would face mandatory life imprisonment upon conviction. Further, for the offenses of kidnapping and murder state law authorizes attorneys to directly file against your client as an adult without need for any prior juvenile proceedings.

If your client is interested in pursuing an agreement along these lines, please do not hesitate to let me know. If I do not hear from you by 5:00 p.m. on July 18, 1997, I shall consider that your client has decided not to pursue a possible resolution along these lines and the above proposal shall be considered withdrawn.

Spies responded to Murphy's letter in a letter dated July 17, 1997, confirming receipt of Murphy's letter and requesting additional time to consider the plea proposal. On July 18, 1997, Spies forwarded Murphy's letter to Wedebrand along with Spies's response. Spies included the following comments in a cover letter to Wedebrand:

Enclosed are copies of a letter I received from Mr. Richard Murphy, the head of the criminal division of the U.S. Attorney's Office for the Northern District of Iowa, and my response to his letter. We will discuss these letters when we get together, which I hope will be soon.

Remember to call me at any time if you have any questions.

On August 5, 1997, Murphy wrote the following to Spies:

This will confirm our conversation of August 4, 1997, regarding the above-referenced matter. As we discussed, related criminal proceedings are currently pending against your client in Clay County, Iowa. Prosecution of your client in both federal and state forums at the same time poses logistical and other problems for our office and the prosecuting state

25

authorities. Accordingly, our office, in agreement with the County Attorneys in Clay and Emmet County, Iowa, has decided that prosecution should only proceed in one forum at this time against your client.

I advised you that if your client desired, the prosecution would proceed in federal court at this time and the state charges would be dismissed. However, in order for this to occur, your client would have to agree to waive any juvenile transfer hearing in this case and agree to be prosecuted as an adult in federal court. This waiver would have to be unconditional. If your client does not elect to proceed in this manner, our office will dismiss the pending federal prosecution and refer the matter back to state authorities for further prosecution.

As we discussed, if this matter is referred back to the state authorities for prosecution, there will be no limitation upon the charges to be pursued by those authorities. In [other] words, it is my expectation that your client will face not only kidnaping charges but felony murder and other charges in the state proceeding. Of course, as we have previously discussed, the county attorneys can proceed directly against your client as an adult in state court.

Finally, as we discussed, time is somewhat of the essence in making the decision as to the forum in which this prosecution will proceed at this time. Accordingly, I would appreciate hearing from you by no later than 5:00 p.m. on Thursday, August 7, 1997, regarding your client's intentions in this matter. If I do not hear from you by that date and time, I shall assume your client is not willing to waive transfer hearings and agree to proceed as an adult in federal court and I shall then take steps to refer this matter back to the state authorities for further prosecution.

On August 5, 1997, Spies forwarded a copy of this letter to Wedebrand's state court attorney, Jon Martin, and to Spies's co-counsel, stating "I would like to discuss this with each of you as soon as possible, and would appreciate your calls." On August 6, 1997,

he forwarded a copy of Murphy's letter to Wedebrand, stating "[a]fter you have read this over, please call me."

On August 6, 1997, Murphy wrote to Spies confirming their conversation earlier that day in which Spies had requested an extension of time to consider the matters contained in Murphy's letter of August 5, 1997. Murphy extended the deadline for responding to the plea offer to noon on Monday, August 11, 1997.

On August 6, 1997, the Clay County Attorney and an Assistant Emmet County Attorney sent the following letter to Spies and Martin:

> We have had numerous telephone conferences with Steve Rapp, Rich Murphy, and Janet Papenthien of the U.S. Attorney's office in the last several weeks about the cases filed against the three juveniles in this matter. We understand that there has been a plea offer made to your client by the U.S. Attorney's Office. That offer is as follows:
>
> 1. An adjusted sentencing guideline of 360 months to life imprisonment, with no departure below 360 months. Any sentence other than life may be reduced by 15% for good time served.
>
> 2. Your client would cooperate and testify truthfully in order to receive the sentencing guideline range.
>
> 3. Your client would waive further juvenile proceedings, and agree to be transferred to adult status, and prosecuted as an adult.
>
> We are in agreement that if your client does not accept the offer made by the U.S. Attorney, the Federal charges against him would be dismissed prior to any juvenile waiver proceedings in Federal Court, and the case returned to Clay County, or filed anew in Emmet County, where they would be charged as adults.
>
> We are in agreement that each of the juveniles deserves a life sentence because of their involvement in the shooting of

> Sky Erickson. Therefore, there will be no plea offers of less than one Class A felony, without possibility of parole.
>
> We have also spoken with Julio Barron of the Minnesota Attorney General's office, who would handle any Minnesota prosecution. He has assured me that in the unlikely event of a verdict adverse to the State of Iowa on any case returned to Iowa State Court, murder charges will be immediately filed against that person in the Jackson County, Minnesota state court.
>
> We trust you will convey this information to your clients.

Spies forwarded this letter to Wedebrand on August 7, 1997.

On August 11, 1997, Spies wrote the following to Murphy:

> This letter will serve to confirm my brief conversation with [you] this morning informing [you] that Ryan Wedebrand is unwilling to waive his right to a hearing on the Government's motion to transfer his case from juvenile to adult jurisdiction in the United States District Court. Mr. Wedebrand and his family have carefully considered your earlier letters, as well as the letter from the Clay and Emmet County [] Attorneys. He also understands the prospect that you will dismiss the information pending against him in federal court, and that the state authorities will continue with their prosecution of the state criminal charges.

On August 15, 1997, Spies wrote the following to Wedebrand:

> I have enclosed a copy of the United States Attorney's request to dismiss the federal charges against you, and Judge Mark Bennett's order granting the dismissal. There are now no federal charges pending against you, and my service as your lawyer in your case is over.

At his PCR hearing, Wedebrand testified he only spoke with Spies once about the terms of the proposed plea agreement, during a telephone conversation (Tr. 21), and Jon Martin never talked with him about the federal plea offer (Tr. 23, 37). Wedebrand's impression of the offer was that "it seemed like a lot." (Tr. 22) He recalled that Spies

told him it would be "stupid" for him to waive his right to be tried in juvenile court.[4] *Id.* According to Wedebrand, Spies never told him that if he were to accept the plea offer, he might be eligible for release in as few as 25 1/2 years. *Id.*

Wedebrand testified he believed he would be treated as a juvenile in both state and federal court, and he was not aware that he would be treated as an adult automatically in state court. (Tr. 23) According to Wedebrand, although he knew he was being charged with kidnapping and conspiracy in state court, he did not "realize or know or believe" that he also could be charged with murder under the Iowa felony murder rule, and in fact, no one ever explained the Iowa felony murder rule to him.[5] (Tr. 23-24, 30-31) He testified he was never told by his attorneys that if he rejected the plea offer, he likely would be charged with first degree murder in state court and would face a sentence of life with no parole. (Tr. 24-25) He testified he decided to reject the plea offer after discussing the matter with his mother because of Spies's advice that it would be "stupid" for him to waive his rights as a juvenile in federal court. (Tr. 27) According to Wedebrand, if he had been advised properly, he would have accepted the plea proposal. (Tr. 31)

Leon Spies has a reputation as an extremely competent defense attorney with extensive experience in high-profile criminal cases. (Tr. 160) Spies testified at the PCR hearing that after he was appointed to represent Wedebrand in federal court, he was given blanket access to the U.S. Attorney's discovery file, which included all of the government's witness statements, specific evidence, scientific tests, and evidence of the government's investigation into related drugs crimes. (Tr. 141) He also was able to

---

[4] Wedebrand was born on July 14, 1980. He was 16 years old when the offense was committed, and 17 years old when the plea offer was made and rejected. (Tr. 26)

[5] The murder charge against Wedebrand was not added until October 14, 1997, when the second state trial information was filed in Clay County. This was after August 11, 1997, when plea negotiations were concluded.

review, under a joint defense agreement, statements from the other defendants in the case. (*Id.*) In addition, Spies undertook some additional investigation on his own. (Tr. 141-42)

After receiving letters from Assistant U.S. Attorney Murphy and the county attorneys outlining the plea proposal, he talked about the pros and cons of the proposal with Wedebrand. (Tr. 142-43) He also discussed the plea proposal with the attorneys representing the other minors charged in the case and with Martin, Wedebrand's attorney in the state case. (Tr. 143) Spies met with Wedebrand several times, and talked with his mother on the telephone, to discuss the pros and cons of the plea offer. Spies testified he was "sure we discussed the alternatives pretty extensively." (Tr. 144) He denied that he limited his conversations with Wedebrand solely to the question of waiver or non-waiver of juvenile status in federal court. He stated he remembered Wedebrand "being quite engaged and involved in the conversations," and he recalled they "talked about both state and federal sentencing law, various procedural avenues available to him and the possibilities of those." (*Id.*) They also covered the "procedural," " strategic," and "collateral" aspects of the case, which included whether Wedebrand's case would stay in juvenile court in either the federal or state court systems. (Tr. 144-45) According to Spies, they "covered pretty much the waterfront on the strategic values of doing different things in this case." (Tr. 145) Spies testified Wedebrand was aware that he was facing one or more Class A felonies in Iowa state court, with mandatory life imprisonment. (*Id.*) When asked if Wedebrand was aware of the probability that he would be tried as an adult in state court, Spies responded, "My recollection is yes." (*Id.*)

When asked how the decision to reject the plea offer was made, Spies responded as follows:

> Well, as in all cases where decisions are to be made by the client, it's my practice, and it was in this case, to inform Ryan of all the choices available to him, the pros and the cons both legal and strategic as I saw them. I shared with him the benefit of my experience and also the benefit of suggestions

and decisions by other lawyers with whom I had conferred about the case.

(Tr. 147) Spies testified he recommended that Wedebrand reject the plea offer. When asked why, Spies stated the following:

> I can't say specifically, again without looking at my file and the notes that I made and the research that I did in evaluating the decision, but my recollection is that there were going to be discovery advantages in state court. There were going to be charging alternatives and jury verdict alternatives that would not be available to him should we proceed to accept the government's plea, and all things considered there were sound reasons for pursuing the case in state court rather than federal court. . . . I guess I would add that I think the lawyers representing the other juvenile defendants had extensive background in state and federal cases.[6] I respected their judgment as well as my own, and again, it is my recollection that Ryan was quite enthusiastic with the decision about going forward with the state alternative.

(Tr. 147-48) When asked if Wedebrand had any difficulties in understanding these matters, Spies testified, "No. I found Ryan . . . to be engaged, intelligent and certainly very concerned." (Tr. 149)

On cross-examination, Spies confirmed that he explained the Iowa felony murder rule to Wedebrand, and he told Wedebrand he was being treated as a juvenile in the federal system and likely would be charged in state court as an adult. (Tr. 150) On redirect examination, Spies testified he was confident Wedebrand fully understood the charges pending against him, the fact that he probably would be charged with murder in state court, and the sentencing possibilities in federal and state court. (Tr. 157)

Jon Martin testified concerning the plea negotiations as follows:

---

[6]All three juveniles charged in the case, Wedebrand, Juan Astello, and Thomas Mann, were offered the same plea offer, and all three turned the offer down. (Tr. 110, 119)

> My best recollection of [my] conversation[s] with Mr. Spies
> was [I advised him about] how I felt the personalities were of
> the prosecutors and how they may or may not come off of their
> position in the state charges, and then we also discussed . . .
> how he was presenting this with Ryan and what the two
> differences were in the systems. He understands the federal
> system much more than I do, but I don't practice it, and he
> was pretty much taking the lead as you can tell by these letters
> on the plea with Mr. Wedebrand.

(Tr. 180-81) Martin testified he did not participate with Spies directly in the decision-making process concerning whether to accept or reject the plea offer. (Tr. 183)

## C. Discussion

The analysis of Wedebrand's ineffective assistance of counsel claims must be conducted pursuant to the *Strickland* "performance" and "prejudice" test. A petitioner must satisfy both prongs of the test in order to prevail on an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. It is not necessary to address the performance and prejudice prongs in any particular order, nor must both prongs be addressed if the district court determines the petitioner has failed to meet one prong. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069.

Wedebrand first argues the attorney appointed to represent him in the state case, Jon Martin, was ineffective because he failed to discuss the terms and consequences of the plea offer with him. (Doc. No. 17, p. 11) The record establishes that Martin did not, in fact, discuss the plea offer with Wedebrand. Instead, Martin delegated that responsibility to Leon Spies, the attorney appointed to represent Wedebrand in the federal court action.

Martin testified he allowed Spies to take the lead in presenting the plea offer to Wedebrand because Spies understood both the federal system and the state system, and Martin did not practice federal criminal law. This was entirely appropriate. "Competent representation can . . . be provided through the association of a lawyer of established

competence in the field in question." Iowa Rule of Professional Conduct 32.1.1, comment 2. This approach was adopted implicitly by the Iowa Court of Appeals:

> On appeal, Wedebrand focuses on whether he received advice from his state-appointed counsel, ignoring the fact he was fully advised from other sources. Wedebrand's state-appointed counsel testified his federal-appointed counsel was acting as lead counsel in the federal plea negotiations. Wedebrand's state-appointed counsel had several conversations with his federal-appointed counsel and was aware his federal-appointed counsel was advising Wedebrand in regard to the federal plea offer. We determine Wedebrand has failed to show he received ineffective assistance from his state-appointed counsel in regard to the plea offer made by the United States Attorney.

*Wedebrand II*, at *2. Wedebrand has made no showing that this finding by the Iowa Court of Appeals was either contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. *Williams v. Taylor*, 529 U.S. at 404-05, 120 S. Ct. at 1519.

In any event, applying the *Strickland* standard, Wedebrand cannot claim he was prejudiced by Martin's failure to advise him concerning the plea negotiations because he received competent advice from another attorney on the same subject.

Wedebrand next argues "the Iowa Court of Appeals made an unreasonable determination of the facts in light of the evidence presented at the Post-Conviction Relief hearing" in finding he had "discussed the matter fully with his federal-appointed counsel before deciding to reject the federal plea offer." (Doc. No. 17, p. 13) Wedebrand argues this point at length. (Doc. No. 17, pp. 13-17) For example, he asserts that Spies did not discuss the matter fully with him, and he was not advised fully and adequately regarding the applicable law. He argues he did not understand the letters from the state and federal prosecutors that were forwarded to him by Spies. He claims Spies did not advise him of the elements necessary to prove the state charges against him. He asserts he was not

adequately advised of the differences between juvenile and adult prosecutions in state and federal court.

This argument fails to take into account an essential point. Spies testified he explained and discussed all of these matters with Wedebrand. The Iowa courts chose to believe Spies's testimony, and to disbelieve the directly contradictory testimony of Wedebrand. The Iowa court's conclusion was entirely reasonable. Spies is a respected lawyer, and his testimony was corroborated by ample documentary evidence admitted into the record.

Wedebrand relies heavily on *Wanatee v. Ault*, 101 F. Supp. 2d 1189 (N.D. Iowa 2000). In that case, the petitioner claimed ineffective assistance of counsel led him to reject a favorable plea offer. He claimed his lawyer's performance was deficient because his lawyer failed to advise him properly concerning several important legal principles applicable to the charges against him, including the felony-murder rule, aiding and abetting liability, and liability for joint criminal conduct. He claimed prejudice because the offered plea bargain would have resulted in a lesser sentence and he would have accepted the plea offer but for his lawyer's unprofessional advice. Chief Judge Mark W. Bennett found, under the facts in that case, that the petitioner had established both deficient performance and resulting prejudice.

Here, the Iowa courts properly found that Wedebrand's lawyers advised him fully and completely concerning all of the important legal issues in the case. This court cannot find the Iowa courts applied the governing legal rules unreasonably to the facts of this case. *See Williams*, 529 U.S. at 407-08, 120 S. Ct. at 1520.

It appears obvious, in hindsight, that Wedebrand would been better off if he had accepted the plea offer.[7] In fact, again in hindsight, it may appear Spies made a faulty tactical decision in recommending that Wedebrand reject the plea offer. This is not enough, however, to establish that the performance of Wedebrand's attorneys was constitutionally ineffective. The proper legal standards were summarized as follows by the Sixth Circuit Court of Appeals in *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000):

> First, a defendant must show that counsel's performance was "deficient," involving "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." . . . This requires that counsel's conduct "fell below an objective standard of reasonableness," . . . and that counsel's "identified acts and omissions were outside the wide range of professionally competent assistance." . . . In making this determination, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that it is the defendant who "bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy." . . . Courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.

*Hofbauer*, 228 F.3d at 702 (citations omitted). Further, as the Eighth Circuit Court of Appeals has held, errors in tactical decisions do not necessarily amount to ineffective assistance of counsel. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." *James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996). Wedebrand has not met his burden under these standards.

---

[7]This conclusion is not necessarily true, however. The plea offer was that Wedebrand would agree to a sentencing range in federal court of 30 years to life. In state court, he was sentenced to life in prison with no possibility of parole. He might have received the same sentence in federal court.

35

Wedebrand also argues the court should not defer to the Iowa state courts in judging Spies's conduct because "[t]he duty owed by Leon Spies to Wedebrand as his attorney for his Federal charges and whether Spies [performed] efficiently and any resulting prejudice thereby is a matter which this Court should be able to review independently." (Doc. No. 17, p. 18) Wedebrand cites no legal authorities, and, in fact, does not even advance an argument in support of this position. The court find no merit to the argument.

In summary, the court finds Wedebrand has failed to demonstrate his attorneys were ineffective in advising him regarding the proposed plea agreement. Having failed to meet his burden on this, the sole issue before the court, Wedebrand's petition for writ of *habeas corpus* should be denied.

## V. CONCLUSION

Therefore, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[8] in accordance with 28 U.S.C. § 636 (b)(1)(c) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that Wedebrand's petition for writ of *habeas corpus* be denied, and judgment be entered in favor of the State and against Wedebrand.

**IT IS SO ORDERED.**

**DATED** this 17th day of November, 2005.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[8]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).