**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

RYAN WEDEBRAND,

         Petitioner,

vs.

JOHN AULT,

         Respondent.

No. C04-4055-MWB

**ORDER REGARDING
MAGISTRATE'S REPORT AND
RECOMMENDATION ON
PETITIONER'S WRIT OF HABEAS
CORPUS**

————————————

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        *1. Standard of review for report and recommendations* . . . . . . 16
        *2. General standards for § 2254 relief* . . . . . . . . . . . . . . . . . 18
        *3. Standards for ineffective assistance of counsel claims* . . . . . 19
    *B. Objections To Report And Recommendation* . . . . . . . . . . . . . . . . . 20
        *1. Exhaustion of claims* . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        *2. Miscarriage of justice* . . . . . . . . . . . . . . . . . . . . . . . . . 25
        *3. Contrary to or unreasonable application of established law* . . 28
        *4. Similarity to decision in Wanatee v. Ault* . . . . . . . . . . . . . 29
        *5. Factual finding of the Iowa Court of Appeals* . . . . . . . . . . 31

*III. CERTIFICATE OF APPEALABILITY* . . . . . . . . . . . . . . . . . . . . . . . . . 33

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## I.  INTRODUCTION

### A.  Procedural Background

On June 27, 1997, petitioner Ryan Wedebrand ("Wedebrand") was charged in a trial information filed in the Iowa District Court for Clay County, Iowa with first-degree kidnaping and conspiracy to commit kidnaping. On October 14, 1997, a second trial information was filed charging Wedebrand with first-degree murder. The trial informations were consolidated for trial.

On February 18, 1998, a jury found Wedebrand guilty of first-degree murder and first-degree kidnaping, but not guilty of conspiracy to commit kidnaping. Wedebrand was sentenced on each of the charges to a mandatory sentence of life imprisonment with no possibility of parole.

Wedebrand filed a direct appeal, which was referred to the Iowa Court of Appeals. In the appeal, Wedebrand asserted the following two claims: (1) the district court abused its discretion in denying Wedebrand's motion for change of venue based on prejudicial pretrial publicity; and (2) the district court did not have territorial jurisdiction over the crimes charged because the alleged crimes took place in Minnesota and not in Iowa. *State v. Wedebrand*, 602 N.W.2d 186, 188-89 (Iowa Ct. App. 1999) ("*Wedebrand I*"). The Court of Appeals denied Wedebrand's appeal. *Id.* at 189-90.

Wedebrand filed an application for further review by the Iowa Supreme Court, raising the same two issues. The application was denied on October 29, 1999, and Procedendo was issued on November 17, 1999.

On March 22, 2000, Wedebrand filed a *pro se* application for post-conviction relief in Clay County District Court. In the application, he alleged his conviction should be overturned on the following grounds:

> 1.      Jury Instruction # 15 violated petitioner's Due Process Rights under the 5th, 6th and 14th Amendments of the United States Constitution.
>
> 2.      Petitioner's appellate counsel was ineffective for not arguing that the testimony of Ben Alden was inconsistent with his prior deposition.
>
> 3.      Petitioner's appellate counsel was ineffective for not arguing that more than one (1) of the jurors had personal acquaintance with the victim.
>
> 4.      Petitioner's appellate counsel was ineffective for not preserving his two claims; namely, Territorial Jurisdiction and Change of Venue, for federal habeas review.  That is to say, his issues were never argued under federal theory. Consequently, his Due Process rights under the 14th amendment of the U.S. Constitution have been abridged.

On March 8, 2001, after the appointment of counsel to represent him, Wedebrand filed an amended application for post-conviction relief.  In the amended application, he alleged the following grounds:

> A.      The conviction or sentence was in violation of the Constitution of the United States or the Constitution or laws of this state.
>
> B.      The Court was without jurisdiction to impose sentence.
>
> C.      There exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.

On November 7, 2001, Wedebrand filed a second amended application for post-conviction relief in which he alleged the same grounds he had alleged in the amended application.

After a hearing, the Iowa District Court denied Wedebrand's post-conviction application.  Wedebrand appealed the Iowa District Court's ruling to the Iowa Supreme Court, raising the following issues:

> A.      Counsel was Ineffective to Advise Ryan of the Terms and Consequences of the Federal Plea Offer as it

Related to His Pending State Charges.

B.    Counsel was Ineffective for Failing to Appeal the Trial Court's Denial of Ryan's Motion in Limine Requesting That Any Evidence Relating to Ryan's Participation in the Los Krazy Boyz Gang Be Excluded from use at Trial.

C.    Counsel was Ineffective for Failing to Strike Biased Jurors Which Denied Ryan His Right to Trial by a Fair and Impartial Jury as Required by the Constitutions of Iowa and the United States.

D.    Counsel was Ineffective in Failing to File a Motion for Judgment of Acquittal Alleging That it Is Legally Impossible for Ryan to be Convicted of Aiding and Abetting Kidnaping Given His Acquittal on Conspiracy to Commit Kidnaping.

E.    Counsel was Ineffective for Failing to Object to the Marshaling Instructions for First Degree Murder and Kidnaping.

F.    The Cumulative Effects of Counsel's Errors Were So Prejudicial That it Denied Him a Fair and Impartial Trial, as Well as Effective Assistance of Counsel

Wedebrand's appeal was referred to the Iowa Court of Appeals, and the Iowa Court of Appeals affirmed the decision of the district court. *State v. Wedebrand*, 669 N.W.2d 262 (Table), 2003 WL 21543146 at *3-5 (Iowa Ct. App. July 10, 2003) ("*Wedebrand II*").

Wedebrand sought further review by the Iowa Supreme Court, in which he raised only two issues: "The Court of Appeals ignored the Iowa Code of Professional Responsibility for Lawyers EC7-7 when it held that Wedebrand's state appointed counsel was not ineffective for failing to advise Wedebrand regarding the terms and consequences of the federal plea offer as it related to his pending state charges"; and "The Iowa Court of Appeals failed to set forth specific factors which they considered in deciding whether

4

Wedebrand would have accepted the federal plea offer but for trial counsel's erroneous advice." On September 19, 2003, the application for further review was denied by the Iowa Supreme Court, and Procedendo was issued on September 23, 2003.

Petitioner Wedebrand then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Wedebrand challenges his conviction on the following grounds:

      1.     Ryan Wedebrand's state and federal appointed counsel were ineffective for failing to adequately advise him regarding the consequences of the plea proposal made by the federal and state authorities.

      2.     Ryan Wedebrand's appellate counsel was ineffective for failing to appeal the trial court's denial of Wedebrand's Motion in Limine requesting that any evidence relating to Wedebrand's participation in the Los Krazy Boyz Gang be excluded from use at trial.

      3.     Wedebrand's trial counsel was ineffective for failing to strike biased jurors which denied Wedebrand his right to a trial by fair and impartial jury. Wedebrand's appellate counsel was ineffective for failing to appeal this issue.

      4.     Ryan Wedebrand's trial counsel was ineffective for failing to file a Motion for Judgement of Acquittal regarding his kidnaping and murder conviction after the jury rendered a verdict of not guilty on conspiracy to commit kidnaping.

      5.     Wedebrand's trial counsel was ineffective for failing to object to the jury instructions for first degree murder and kidnaping first degree.

      6.     The cumulative effects of Wedebrand's trial and appellate counsel's ineffectiveness were so prejudicial that it denied him a fair trial as well as effective

assistance of counsel.

Petition, Doc. No. 1, at pp. 5-7.

The petition was referred to United States Magistrate Judge Paul A. Zoss pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Zoss filed a Report and Recommendation in which he recommended denial of Wedebrand's petition. Wedebrand has filed objections to the Report and Recommendation. The court, therefore, must now undertake the necessary review of Judge Zoss's recommended disposition of Wedebrand's petition for a writ of habeas corpus.

### B. Factual Background

In his Report and Recommendation, Judge Zoss noted that the Iowa Supreme Court made the following findings of fact:

> Ryan Wedebrand was charged with first-degree murder and first-degree kidnaping in the shooting death of Gregory "Sky" Erickson. Under the State's theory, Erickson was kidnapped and murdered by members of the Los Krazy Boyz, an Estherville gang, over a disputed drug debt.
>
> According to the State's evidence, Luis Lua and others assaulted and abducted Erickson in Spencer on June 6, 1997. Although not present at the time Erickson was abducted, Wedebrand joined Lua and others near Estherville, Iowa, later that evening. There, Wedebrand got into a car driven by Ramiro Astello along with Lua and Erickson, whose head was covered with a pillowcase. From Estherville Ramiro Astello drove the group to a rural Iowa location where Erickson was bound, gagged, and repeatedly beaten by Wedebrand, Lua, and Juan and Ramiro Astello. Although Lua pointed a gun at Erickson, he did not shoot Erickson following a "not here" admonition by another member of the group. Erickson was then placed in the trunk of the car, covered by a garbage bag,

and driven to an abandoned Minnesota farmstead where he was shot to death by Lua. While in route to Minnesota, Lua told Wedebrand and the others he had enough ammunition for each of them to shoot Erickson. Wedebrand shot Erickson in the hip after Lua fatally shot Erickson in the head. Although others attempted to shoot Erickson after Wedebrand, Lua's gun jammed, and they were unsuccessful.

Report and Recommendation at 2 (quoting *Wedebrand I*, 602 N.W.2d at 187).[1]

Judge Zoss also made the following findings of fact:

In a trial information filed on June 27, 1997, Wedebrand was charged in the Iowa District Court for Clay County with first-degree kidnaping and conspiracy to commit kidnaping. Attorney Jon M. Martin was appointed to represent Wedebrand. On July 2, 1997, Wedebrand was charged in a Complaint filed in the United States District Court for the Northern District of Iowa, 97 CR 3010 (Doc. No. 1), with murder and kidnaping. The federal charges were based on same facts as the state charges. On July 14, 1997, attorney Leon F. Spies was appointed to represent Wedebrand in federal court. On July 18, 1997, the United States Attorney filed an Information against Wedebrand charging him as a juvenile. In Count 1 of the Information, he was charged with kidnaping; in Count 2, he was charged with conspiracy to commit kidnaping; and in Count 3, he was charged with carrying a firearm during and in relation to crimes of violence and drug trafficking crimes.

Shortly after the federal prosecution was commenced, the federal and state prosecutors and Wedebrand's federal and state attorneys entered into joint plea negotiations. On

---

[1] The state court's findings of fact are presumed to be correct in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Liggins v. Burger*, 422 F.3d 642, 649 (8th Cir. 2005); *Cox v. Burger*, 398 F.3d 1025, 1028 (8th Cir. 2005); *Perry v. Kemna*, 356 F.3d 880, 882 (8th Cir.), *cert, denied*, 125 S. Ct. 657 (2004); *King v. Bowersox*, 291 F.3d 539, 540 (8th Cir. 2002), *cert. denied*, 537 U.S. 1093 (2002).

July 17, 1997, Assistant U.S. Attorney Richard L. Murphy wrote a letter to Spies in which he stated, in relevant part, the following:

This will confirm our conversation regarding the [Wedebrand] matter. As we discussed, our office is prepared to negotiate a resolution to this case which could offer your client an opportunity at less than mandatory life imprisonment. This letter is intended to outline the broad terms of such an agreement. However, this letter does not constitute a formal proposed agreement and any such formal plea proposal would be contained in a separate document.

As we discussed, the bottom line of any negotiations in this case would be a plea to a charge or charges that would result in any agreed upon adjusted sentencing guideline range of 360 months to life imprisonment. Any plea agreement would require your client to cooperate and testify truthfully in order to obtain that sentencing guideline range. Your client's cooperation would be taken into consideration at the time of sentencing by determining where within that range he should be sentenced. There would be no departure below 360 months.

We would likewise expect your client to agree to continue to be detained in federal custody without the need for further detention hearings. Similarly, your client would agree to waive further juvenile proceedings and agree to be transferred to adult status and prosecuted as an adult.

If we were able to reach early agreement along the lines outlined above, I believe the County Attorneys in Emmet and Clay County would be willing to forego state prosecution. As we discussed, should the state pursue charges, your client would face mandatory life imprisonment upon conviction. Further, for the

offenses of kidnaping and murder state law authorizes attorneys to directly file against your client as an adult without need for any prior juvenile proceedings.

> If your client is interested in pursuing an agreement along these lines, please do not hesitate to let me know. If I do not hear from you by 5:00 p.m. on July 18, 1997, I shall consider that your client has decided not to pursue a possible resolution along these lines and the above proposal shall be considered withdrawn.

Spies responded to Murphy's letter in a letter dated July 17, 1997, confirming receipt of Murphy's letter and requesting additional time to consider the plea proposal. On July 18, 1997, Spies forwarded Murphy's letter to Wedebrand along with Spies's response. Spies included the following comments in a cover letter to Wedebrand:

> Enclosed are copies of a letter I received from Mr. Richard Murphy, the head of the criminal division of the U.S. Attorney's Office for the Northern District of Iowa, and my response to his letter. We will discuss these letters when we get together, which I hope will be soon.

> Remember to call me at any time if you have any questions.

On August 5, 1997, Murphy wrote the following to Spies:

> This will confirm our conversation of August 4, 1997, regarding the above-referenced matter. As we discussed, related criminal proceedings are currently pending against your client in Clay County, Iowa. Prosecution of your client in both federal and state forums at the same time poses logistical and other problems for our office and the prosecuting state authorities. Accordingly, our office, in agreement with the County Attorneys in Clay and Emmet County,

Iowa, has decided that prosecution should only proceed in one forum at this time against your client.

I advised you that if your client desired, the prosecution would proceed in federal court at this time and the state charges would be dismissed. However, in order for this to occur, your client would have to agree to waive any juvenile transfer hearing in this case and agree to be prosecuted as an adult in federal court. This waiver would have to be unconditional. If your client does not elect to proceed in this manner, our office will dismiss the pending federal prosecution and refer the matter back to state authorities for further prosecution.

As we discussed, if this matter is referred back to the state authorities for prosecution, there will be no limitation upon the charges to be pursued by those authorities. In [other] words, it is my expectation that your client will face not only kidnaping charges but felony murder and other charges in the state proceeding. Of course, as we have previously discussed, the county attorneys can proceed directly against your client as an adult in state court.

Finally, as we discussed, time is somewhat of the essence in making the decision as to the forum in which this prosecution will proceed at this time. Accordingly, I would appreciate hearing from you by no later than 5:00 p.m. on Thursday, August 7, 1997, regarding your client's intentions in this matter. If I do not hear from you by that date and time, I shall assume your client is not willing to waive transfer hearings and agree to proceed as an adult in federal court and I shall then take steps to refer this matter back to the state authorities for further prosecution.

On August 5, 1997, Spies forwarded a copy of this letter to Wedebrand's state court attorney, Jon Martin, and to Spies's

co-counsel, stating "I would like to discuss this with each of you as soon as possible, and would appreciate your calls." On August 6, 1997, he forwarded a copy of Murphy's letter to Wedebrand, stating "[a]fter you have read this over, please call me."

On August 6, 1997, Murphy wrote to Spies confirming their conversation earlier that day in which Spies had requested an extension of time to consider the matters contained in Murphy's letter of August 5, 1997. Murphy extended the deadline for responding to the plea offer to noon on Monday, August 11, 1997.

On August 6, 1997, the Clay County Attorney and an Assistant Emmet County Attorney sent the following letter to Spies and Martin:

> We have had numerous telephone conferences with Steve Rapp, Rich Murphy, and Janet Papenthien of the U.S. Attorney's office in the last several weeks about the cases filed against the three juveniles in this matter. We understand that there has been a plea offer made to your client by the U.S. Attorney's Office. That offer is as follows:
>
> 1.    An adjusted sentencing guideline of 360 months to life imprisonment, with no departure below 360 months. Any sentence other than life may be reduced by 15% for good time served.
>
> 2.    Your client would cooperate and testify truthfully in order to receive the sentencing guideline range.
>
> 3.    Your client would waive further juvenile proceedings, and agree to be transferred to adult status, and prosecuted as an adult.
>
> We are in agreement that if your client does not accept the offer made by the U.S. Attorney, the Federal

charges against him would be dismissed prior to any juvenile waiver proceedings in Federal Court, and the case returned to Clay County, or filed anew in Emmet County, where they would be charged as adults.

We are in agreement that each of the juveniles deserves a life sentence because of their involvement in the shooting of Sky Erickson. Therefore, there will be no plea offers of less than one Class A felony, without possibility of parole.

We have also spoken with Julio Barron of the Minnesota Attorney General's office, who would handle any Minnesota prosecution. He has assured me that in the unlikely event of a verdict adverse to the State of Iowa on any case returned to Iowa State Court, murder charges will be immediately filed against that person in the Jackson County, Minnesota state court.

We trust you will convey this information to your clients.

Spies forwarded this letter to Wedebrand on August 7, 1997.

On August 11, 1997, Spies wrote the following to Murphy:

This letter will serve to confirm my brief conversation with [you] this morning informing [you] that Ryan Wedebrand is unwilling to waive his right to a hearing on the Government's motion to transfer his case from juvenile to adult jurisdiction in the United States District Court. Mr. Wedebrand and his family have carefully considered your earlier letters, as well as the letter from the Clay and Emmet County [] Attorneys. He also understands the prospect that you will dismiss the information pending against him in federal court, and that the state authorities will continue with their prosecution of the state criminal charges.

On August 15, 1997, Spies wrote the following to

Wedebrand:

> I have enclosed a copy of the United States Attorney's request to dismiss the federal charges against you, and Judge Mark Bennett's order granting the dismissal. There are now <u>no</u> federal charges pending against you, and my service as your lawyer in your case is over.

At his POST-CONVICTION RELIEF hearing, Wedebrand testified he only spoke with Spies once about the terms of the proposed plea agreement, during a telephone conversation (Tr. 21), and Jon Martin never talked with him about the federal plea offer (Tr. 23, 37). Wedebrand's impression of the offer was that "it seemed like a lot." (Tr. 22) He recalled that Spies told him it would be "stupid" for him to waive his right to be tried in juvenile court. *Id*. According to Wedebrand, Spies never told him that if he were to accept the plea offer, he might be eligible for release in as few as 25 1/2 years. *Id*.

Wedebrand testified he believed he would be treated as a juvenile in both state and federal court, and he was not aware that he would be treated as an adult automatically in state court. (Tr. 23) According to Wedebrand, although he knew he was being charged with kidnaping and conspiracy in state court, he did not "realize or know or believe" that he also could be charged with murder under the Iowa felony murder rule, and in fact, no one ever explained the Iowa felony murder rule to him. (Tr. 23-24, 30-31) He testified he was never told by his attorneys that if he rejected the plea offer, he likely would be charged with first degree murder in state court and would face a sentence of life with no parole. (Tr. 24-25) He testified he decided to reject the plea offer after discussing the matter with his mother because of Spies's advice that it would be "stupid" for him to waive his rights as a juvenile in federal court. (Tr. 27) According to Wedebrand, if he had been advised properly, he would have accepted the plea proposal. (Tr. 31)

Leon Spies has a reputation as an extremely competent

defense attorney with extensive experience in high-profile criminal cases. (Tr. 160) Spies testified at the POST-CONVICTION RELIEF hearing that after he was appointed to represent Wedebrand in federal court, he was given blanket access to the U.S. Attorney's discovery file, which included all of the government's witness statements, specific evidence, scientific tests, and evidence of the government's investigation into related drugs crimes. (Tr. 141) He also was able to review, under a joint defense agreement, statements from the other defendants in the case. (*Id.*) In addition, Spies undertook some additional investigation on his own. (Tr. 141-42)

After receiving letters from Assistant U.S. Attorney Murphy and the county attorneys outlining the plea proposal, he talked about the pros and cons of the proposal with Wedebrand. (Tr. 142-43) He also discussed the plea proposal with the attorneys representing the other minors charged in the case and with Martin, Wedebrand's attorney in the state case. (Tr. 143) Spies met with Wedebrand several times, and talked with his mother on the telephone, to discuss the pros and cons of the plea offer. Spies testified he was "sure we discussed the alternatives pretty extensively." (Tr. 144) He denied that he limited his conversations with Wedebrand solely to the question of waiver or non-waiver of juvenile status in federal court. He stated he remembered Wedebrand "being quite engaged and involved in the conversations," and he recalled they "talked about both state and federal sentencing law, various procedural avenues available to him and the possibilities of those." (*Id.*) They also covered the "procedural," " strategic," and "collateral" aspects of the case, which included whether Wedebrand's case would stay in juvenile court in either the federal or state court systems. (Tr. 144-45) According to Spies, they "covered pretty much the waterfront on the strategic values of doing different things in this case." (Tr. 145) Spies testified Wedebrand was aware that he was facing one or more Class A felonies in Iowa state court, with mandatory life imprisonment. (*Id.*) When asked

if Wedebrand was aware of the probability that he would be tried as an adult in state court, Spies responded, "My recollection is yes." (*Id.*)

When asked how the decision to reject the plea offer was made, Spies responded as follows:

> Well, as in all cases where decisions are to be made by the client, it's my practice, and it was in this case, to inform Ryan of all the choices available to him, the pros and the cons both legal and strategic as I saw them. I shared with him the benefit of my experience and also the benefit of suggestions and decisions by other lawyers with whom I had conferred about the case.

(Tr. 147) Spies testified he recommended that Wedebrand reject the plea offer. When asked why, Spies stated the following:

> I can't say specifically, again without looking at my file and the notes that I made and the research that I did in evaluating the decision, but my recollection is that there were going to be discovery advantages in state court. There were going to be charging alternatives and jury verdict alternatives that would not be available to him should we proceed to accept the government's plea, and all things considered there were sound reasons for pursuing the case in state court rather than federal court. . . . I guess I would add that I think the lawyers representing the other juvenile defendants had extensive background in state and federal cases. I respected their judgment as well as my own, and again, it is my recollection that Ryan was quite enthusiastic with the decision about going forward with the state alternative.

(Tr. 147-48) When asked if Wedebrand had any difficulties in understanding these matters, Spies testified, "No. I found Ryan . . . to be engaged, intelligent and certainly very concerned." (Tr. 149)

On cross-examination, Spies confirmed that he

explained the Iowa felony murder rule to Wedebrand, and he told Wedebrand he was being treated as a juvenile in the federal system and likely would be charged in state court as an adult. (Tr. 150) On redirect examination, Spies testified he was confident Wedebrand fully understood the charges pending against him, the fact that he probably would be charged with murder in state court, and the sentencing possibilities in federal and state court. (Tr. 157)

Jon Martin testified concerning the plea negotiations as follows:

> My best recollection of [my] conversation[s] with Mr. Spies was [I advised him about] how I felt the personalities were of the prosecutors and how they may or may not come off of their position in the state charges, and then we also discussed . . . how he was presenting this with Ryan and what the two differences were in the systems. He understands the federal system much more than I do, but I don't practice it, and he was pretty much taking the lead as you can tell by these letters on the plea with Mr. Wedebrand.

(Tr. 180-81) Martin testified he did not participate with Spies directly in the decision-making process concerning whether to accept or reject the plea offer. (Tr. 183)

Report and Recommendation at 23-32 (footnotes omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II. LEGAL ANALYSIS

### A. Standard Of Review

#### 1. Standard of review for report and recommendations

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*), *cert. denied*, 518 U.S. 1025 (1996). Because objections have been filed in this case to Judge Zoss's legal conclusions, the court must conduct a *de novo* review.

## 2. *General standards for § 2254 relief*

Section 2254(d)(a) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 governs Wedebrand's petition.

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)).[2] In this instance, Wedebrand seeks habeas relief under the second category. An "unreasonable application" of Federal law by a state court can occur in two ways: (1) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) where "the state court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. It is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable. *Id.* at 411; *see Bell v. Cone*, 535 U.S. 685, 694 (2002) ("an unreasonable application is different from an incorrect one.").

---

[2]Section 2254(d)(2) also allows a writ of habeas corpus to issue if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2); *see cf. Sexton v. Kemna*, 278 F.3d 808, 811 (8th Cir.), *cert. denied*, 537 U.S. 886 (2002). Wedebrand does not seek habeas relief on this ground.

### 3. *Standards for ineffective assistance of counsel claims*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In the Report and Recommendation, Judge Zoss outlined the two-prong criteria employed in determining the effectiveness of counsel, which was enunciated by the United States Supreme Court in *Strickland*. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "the deficient performance prejudiced the defense." *Id.* at 687; *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001) (stating that the two-prong test set forth in Strickland requires a showing that (1) counsel was constitutionally deficient in his or her performance and (2) the deficiency materially and adversely prejudiced the outcome of the case); *Garrett v. Dormire*, 237 F.3d 946, 950 (8th Cir. 2001). Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Indeed, "counsel must exercise reasonable diligence to produce exculpatory evidence[,] and strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991). However, there is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy. *Strickland*, 466 U.S. at 689; *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (in determining whether counsel's performance was deficient, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .") (citing *Strickland* ). With respect to the "strong presumption" afforded to counsel's performance, the Supreme Court specifically stated:

Judicial scrutiny of counsel's performance must be highly

deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (citations omitted).

To demonstrate that counsel's error was prejudicial, thereby satisfying the second prong of the *Strickland* test, a habeas petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The court will now turn to Wedebrand's assertions of error upon which he bases his ineffective assistance of counsel claims, as well as Judge Zoss's conclusions with respect to those claims, followed by this court's analysis of Wedebrand's objections to the legal conclusions reached by Judge Zoss.

## B.  Objections To Report And Recommendation

As noted above, Wedebrand contends that his counsel's performance was deficient in the following ways:  (1) for failing to adequately advise him regarding the consequences

of the plea proposal made by the federal and state authorities; (2) for failing to appeal the trial court's denial of Wedebrand's Motion in Limine requesting that any evidence relating to Wedebrand's participation in the Los Krazy Boyz Gang be excluded from the use at trial; (3) for failing to strike biased jurors which denied Wedebrand his right to a trial by fair and impartial jury, and his appellate counsel was ineffective for failing to appeal this issue; (4) for failing to file a Motion for Judgment of Acquittal regarding his kidnaping and murder conviction after the jury rendered a verdict of not guilty on conspiracy to commit kidnaping; (5) for failing to object to the jury instructions for first degree murder and kidnaping first degree; and, (6) that the cumulative effects of Wedebrand's trial and appellate counsel's ineffectiveness were so prejudicial that it denied him a fair trial as well as effective assistance of counsel.

Judge Zoss concluded that Wedebrand has preserved for review only the issue of whether his state and federal attorneys provided ineffective assistance of counsel in connection with their advice to him concerning the consequences of the state and federal plea proposals. Judge Zoss found that because Wedebrand failed to raise his other claims on appeal from the denial of post-conviction relief, those claims remain unexhausted and because time to seek further review has passed, those claims are procedurally defaulted. With respect to the merits of the issue of whether Wedebrand's state and federal attorneys provided ineffective assistance of counsel in connection with their advice to him concerning the consequences of the state and federal plea proposals, Judge Zoss concluded that Wedebrand has failed to demonstrate his attorneys were ineffective in advising him regarding the proposed plea agreement. Judge Zoss, therefore, recommended that Wedebrand's petition for writ of *habeas corpus* be denied.

As noted above, petitioner Webebrand has filed five objections to Judge Zoss's Report and Recommendation. Specifically, defendant Wedebrand objects to: (1) Judge

Zoss's conclusion that some of the issues raised by Wedebrand were not preserved for federal review; (2) Judge Zoss's failure to address whether disallowing Wedebrand to proceed on his other constitutional claims would amount to a fundamental miscarriage of justice; (3) Judge Zoss's conclusion that the Iowa Court of Appeals did not render a decision that was contrary to or involved an unreasonable application of clearly established law; (4) Judge Zoss's conclusion that the Iowa Court of Appeals did not make an unreasonable determination of facts in light of the evidence presented at the post-conviction relief hearing; and, (5) Judge Zoss's conclusion that this case is not similar to *Wanatee v. Ault*, 101 F. Supp.2d 1190 (N.D. Iowa 2000). The court will address each of petitioner Wedebrand's objections to Judge Zoss's Report and Recommendation *seriatim*.

### 1.    *Exhaustion of claims*

Initially, petitioner Wedebrand objects to Judge Zoss's conclusion that all but one issue, his claim that his state and federal attorneys provided ineffective assistance of counsel in connection with their advice to him concerning the consequences of the state and federal plea proposals, raised by defendant Wedebrand were not preserved for federal review. A state prisoner must exhaust a federal constitutional claim in state court before a federal court may consider the claim. 28 U.S.C. § 2254(b)(1)(A),(c); *see Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005); *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001); *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir.), *cert. denied*, 528 U.S. 846 (1999); *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997); *Wayne v. Missouri Bd. of Probation and Parole*, 83 F.3d 994, 996 (8th Cir. 1996); *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir.), *cert. denied*, 517 U.S. 1215 (1996). Exhaustion typically requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). However,

exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the highest state court. *Castille v. Peoples*, 489 U.S. 346, 350 (1989) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)); see *Dixon*, 263 F.3d at 777. "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Wedebrandy v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992); *see Dixon*, 263 F.3d at 777. "The procedural default doctrine, like the abuse of writ doctrine, 'refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions.'" *Dretke v. Haley*, 124 S. Ct. 1847, 1851 (2004) (quoting *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)).

Procedural default protects the integrity of the exhaustion requirement-a petitioner that merely lets the time run on state remedies or presents a federal claim to a state court "in such a manner that the state court could not, consistent with its own procedural rules, have entertained it," has not given the state a fair opportunity to pass on the claims. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). There is a "strong presumption" in favor of requiring exhaustion of state remedies. *Castille*, 489 U.S. at 349. As the Supreme Court observed in *Edwards*:

> "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S., at 732, 111 S. Ct. 2546. We therefore require a prisoner to demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Id.*, at 750, 111 S. Ct. 2546. The one exception to that rule, not at issue here, is the circumstance in which the habeas petitioner can demonstrate

a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice. *Ibid*.

Although we have not identified with precision exactly what constitutes "cause" to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. *Carrier*, 477 U.S., at 488-489, 106 S. Ct. 2639. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. Ibid. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in Carrier that the principles of comity and federalism that underlie our longstanding exhaustion doctrine--then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c)--require that constitutional claim, like others, to be first raised in state court. "[A] claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, supra, at 489, 106 S. Ct. 2639.

*Edwards*, 529 U.S. at 451.

The court concludes that Judge Zoss correctly determined that only one issue, whether Wedebrand's state and federal attorneys provided ineffective assistance of counsel in connection with their advice to him concerning the consequences of the state and federal plea proposals, that petitioner Wedebrand raised in his application for further review to the Iowa Supreme Court, could be considered in this federal habeas proceeding because petitioner Wedebrand failed to properly exhaust any of his other issues in the Iowa courts. *See O'Sullivan*, 526 U.S. at 842. The exhaustion doctrine requires a petitioner to file for any available discretionary review in the state's highest court prior to seeking habeas

corpus relief with the federal courts. *See O'Sullivan*, 526 U.S. at 847-48; *Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005); *Clark v. Caspar*, 274 F.3d 507, 510 (8th Cir. 2001); *Dixon v. Dormire*, 263 F.3d 774, 780-82 (8th Cir. 2001).

Iowa law provides that "[a] party to an appeal decided by the court of appeals may, as a matter of right, file an application with the supreme court for further review." Iowa Code § 602.4102(4). Iowa Rules of Appellate Procedure provide for discretionary review in the Iowa Supreme Court of decisions by the Iowa Court of Appeals. Iowa R. App. P. 6.402 An application for further review must be filed within 20 days after the Court of Appeals's opinion, and a specific format is provided to govern the filing form and contents of the application. Iowa R. App. P. 6.402(3)-(4). Thus, at some point, petitioner Wedebrand was required to have presented his constitutional claims to the Iowa Supreme Court, through a discretionary application for further review, in order to exhaust his available state court remedies before proceeding to federal court. Although petitioner Wedebrand filed an application for further review, he only raised issues relating to advice of counsel regarding the proposed plea agreement. Thus, because Wedebrand failed to raise his other claims in his application for further review, those claims remain unexhausted. Therefore, this objection to Judge Zoss's Report and Recommendation is overruled.

### 2.    *Miscarriage of justice*

Petitioner Wedebrand next objects to Judge Zoss's failure to address whether disallowing Wedebrand to proceed on his other constitutional claims would amount to a fundamental miscarriage of justice. Petitioner Wedebrand alleges that he raised the fundamental miscarriage of justice issue in his reply brief but Judge Zoss did not address it in his Report and Recommendation, finding instead that Wedebrand had failed to exhaust his state remedies and was therefore in procedural default.

25

The United States Supreme Court has instructed that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The fundamental-miscarriage-of-justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence, where the petitioner shows, as a factual matter, that he did not commit the crime of conviction. *See Schlup v. Delo*, 513 U.S. 298 (1995). The court notes that letting petitioner Wedebrand's conviction and sentence stand would not result in a fundamental miscarriage of justice. *See Murray v. Carrier*, 477 U.S. 478, 495 (1986). Granting habeas relief based upon a finding of a "fundamental miscarriage of justice" is reserved for extraordinary cases. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, although petitioner Wedebrand alleges a claim of actual innocence, what he actually is claiming is legal innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 340 (1992); *Spreitzer v. Schomig*, 219 F.3d 639, 648 (7th Cir. 2000). Petitioner Wedebrand is confusing actual innocence with legal innocence. As United States Supreme Court has explained,

> "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Sawyer*, 505 U.S., at 339, 112 S.Ct., at 2519. We have often emphasized "the narrow scope" of the exception. *Id.*, at 340, 112 S. Ct., at 2519; *accord, Harris v. Reed*, 489 U.S. 255, 271, 109 S.Ct. 1038, 1048, 103 L. Ed.2d 308 (1989) (O'CONNOR, J., concurring) ("narrow exception" for the "'extraordinary case'"). "To be credible," a claim of actual innocence must

> be based on reliable evidence not presented at trial. *Schlup v.*
> *Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865, 130 L. Ed.2d
> 808 (1995). Given the rarity of such evidence, "in virtually
> every case, the allegation of actual innocence has been
> summarily rejected." *Ibid*. (internal quotation marks omitted).

*Caldron v. Thompson*, 523 U.S. 538, 1502-03 (1998). The Court has noted that "[a] prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 340. "'[A]ctual innocence' means factual innocence, not mere legal innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id*. Petitioner Wedebrand's claim here is that he could not be convicted of aiding and abetting a kidnapping since he was acquitted of conspiracy to kidnap. This is an argument for legal innocence rather than factual innocence. Furthermore, the fundamental miscarriage of justice exception applies only when a constitutional violation probably has resulted in the conviction of one actually innocent of a crime and the petitioner supplements his constitutional claim with a colorable showing of factual innocence, which petitioner Wedebrand has not done here. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.") (internal quotation marks omitted). Accordingly, the court concludes that petitioner Wedebrand is not entitled to habeas relief based upon a fundamental miscarriage of justice. Therefore, this objection to Judge Zoss's Report and Recommendation is also overruled.

### 3. *Contrary to or unreasonable application of established law*

Petitioner Wedebrand next objects to Judge Zoss's conclusion that the Iowa Court of Appeals did not render a decision that was contrary to or involved an unreasonable application of clearly established law. In particular, Wedebrand takes issue with Judge Zoss's finding that Wedebrand's state appointed counsel, Jon Martin, engaged in appropriate conduct when he allowed Wedebrand's federal appointed attorney, Leon Spies, to take the lead in presenting the plea offer to Wedebrand.

The record establishes that Martin did not discuss the plea offer with Wedebrand, but instead permitted Spies to take the lead in presenting the plea offer to Wedebrand because Spies understood both the federal system and the state system, and Martin did not practice federal criminal law. The Iowa courts found that this approach was entirely appropriate because Wedebrand's lawyers collectively advised him fully and completely concerning all of the important legal issues in the case. Judge Zoss found that the Iowa Court of Appeals's conclusion on this issue did not involve an unreasonable application of clearly established Federal law. The court concurs in this conclusion.

In rejecting petitioner Wedebrand's post-conviction relief motion on this issue, the Iowa Court of Appeals observed:

> Wedebrand has failed to show he did not receive proper advice prior to rejecting the federal plea offer. The letters from federal and state prosecutors, outlined above, show Wedebrand was informed he could be charged as an adult in state court, that he could be facing a life sentence without parole, and that he could be charged with murder. Wedebrand received copies of all of these letters. In addition, his federal-appointed counsel testified he discussed these matters with Wedebrand. On appeal, Wedebrand focuses on whether he received advice from his state-appointed counsel, ignoring the fact he was fully advised from other sources. Wedebrand's state-appointed

> counsel testified his federal-appointed counsel was acting as
> lead counsel in the federal plea negotiations. Wedebrand's
> state-appointed counsel had several conversations with his
> federal-appointed counsel and was aware his federal-appointed
> counsel was advising Wedebrand in regard to the federal plea
> offer. We determine Wedebrand has failed to show he
> received ineffective assistance from his state-appointed counsel
> in regard to the plea offer made by the United States Attorney.

*Wedebrand II*, 669 N.W.2d 262, 2003 WL 21543146 at *2. Like Judge Zoss, the undersigned concludes that the Iowa court's decision amounts to an objectively reasonable application of *Strickland's* deficiency prong. Because Spies sought advice from others, including Martin, in advising Wedebrand about the pros and cons of the federal plea offer, vis-a-vis the state charges he would face if he turned down that offer, the resulting advice was clearly a "strategic [one] made after thorough investigation of law and facts relevant to plausible options [and is] virtually unchallengeable." *Strickland*, 466 U.S. at 690. This court is satisfied that counsel exercised such reasonable professional judgment in advising petitioner Wedebrand regarding the federal plea offer. Thus, under *Strickland's* guidelines, counsel's strategic choice is to be accorded deference by a reviewing court. This is precisely what the Iowa Court of Appeals did in its review of petitioner Wedebrand's post-coviction petition. The court concludes that the Iowa Supreme Court identified the correct governing legal rules from the Supreme Court's *Strickland* decision and did not unreasonably apply them to the facts of Wedebrand's case. Therefore, this objection to Judge Zoss's Report and Recommendation is also overruled.

### 4. *Similarity to decision in Wanatee v. Ault*

Petitioner Wedebrand next objects to Judge Zoss's conclusion that this case is not similar to the decision in *Wanatee v. Ault*, 101 F. Supp.2d 1189 (N.D. Iowa 2000), *aff'd*, 259 F.3d 700 (8th Cir. 2001). In *Wanatee*, Wanatee and several other individuals

assaulted the victim. *Wanatee*, 259 F.3d at 702. A police officer saw Wanatee beating the victim with a tire iron. The officer caught and arrested Wanatee, but the other individuals who were participating in the assault escaped. *Id.* The victim of the assault died. An examination of the body revealed that a knife wound, rather than a blow with the tire iron, caused the victim's death. *Id.* Wanatee was offered an opportunity to plead guilty to second degree murder in exchange for his cooperation in the prosecution of the other assailants involved in the crime. *Id.* at 703. Wanatee's legal counsel explained the offer to him but did not advise him about the possible application of Iowa's felony murder rule to his case and that a felony murder conviction in Iowa carries a mandatory sentence of life imprisonment without eligibility for parole, while a second degree murder conviction carries a sentence of fifty years with parole eligibility. *Id.* Wanatee turned down the plea offer and was subsequently convicted under the felony murder statute. In rejecting Wanatee's ineffective assistance claim, the Iowa Court of Appeals held that Wanatee could not show that he had been prejudiced by any inadequate advice at the plea bargaining stage because he ultimately received a fair trial. *Id.* The undersigned concluded that the Iowa court's decision amounted to an objectively unreasonable application of *Strickland's* prejudice prong because *Strickland* clearly applies to ineffective assistance claims arising out of the plea bargaining process. This conclusion was affirmed by the Eighth Circuit Court of Appeals. *Id.* at 704.

The *Wanatee* decision is dissimilar to the case presently before the court. Unlike Wanatee, Wedebrand was informed by his defense counsel of the charges he faced at the federal level, as well as the possible state charges he was facing, and the possible sentences in each jurisdiction. Moreover, unlike Wanatee, Wedebrand was informed of the murder felony rule in Iowa and its possible application to him. Thus, unlike the petitioner in Wanatee, Wedebrand was supplied with the information necessary to make an informed

decision regarding the plea offer before him. Therefore, this objection to Judge Zoss's Report and Recommendation is also overruled.

### 5. Factual finding of the Iowa Court of Appeals

Petitioner Wedebrand finally objects to Judge Zoss's conclusion that the Iowa Court of Appeals did not make an unreasonable determination of facts in light of the evidence presented at the post conviction relief hearing. Wedebrand claims Spies, his federal appointed counsel, did not advise him of the elements necessary to prove the state charges against him. He also contends that Spies never specifically discussed the fact that if Wedebrand rejected the federal plea offer, he would automatically be treated as an adult under Iowa law and would have the burden of convincing a state district court to transfer him to juvenile court.

The Iowa Court of Appeals outlined Wedebrand's claims regarding his plea offer argument as follows:

> Wedebrand contends he was not adequately advised by his state-appointed counsel about the consequences in state court of rejecting a plea agreement by federal prosecutors resolving all of the charges against him. He claims he did not know he would be prosecuted as an adult in state court, that he could be sentenced to a life sentence without parole, or that he could be charged with murder in Iowa under the felony murder rule. He asserts that if he had received adequate advice on these matters, he would have accepted the plea offer made by federal authorities.

*Wedebrand II*, 669 N.W.2d 262, 2003 WL 21543146 at *1 (footnote omitted). In concluding that he did not receive improper legal advice before turning down the federal plea offer, the Iowa Court of Appeals found that:

> The letters from federal and state prosecutors, outlined above, show Wedebrand was informed he could be charged as an

> adult in state court, that he could be facing a life sentence without parole, and that he could be charged with murder. Wedebrand received copies of all of these letters. In addition, his federal-appointed counsel testified he discussed these matters with Wedebrand.

*Wedebrand II*, 669 N.W.2d 262, 2003 WL 21543146 at *2. The Iowa Court of Appeals made no factual finding regarding whether Spies advised Wedebrand of the elements of the pending charges. Nor did the Iowa Court of Appeals make a factual finding regarding whether Spies ever specifically discussed the fact that if Wedebrand rejected the federal plea offer, he would automatically be treated as an adult under Iowa law and he would have the burden of convincing a state district court to transfer him to juvenile court. As a result, when Judge Zoss commented on the Iowa Court of Appeals's factual findings, he was commenting on the factual findings actually made by the Iowa Court of Appeals in *Wanatee II*. The factual claims asserted above were not the subject of a factual finding by the Iowa Court of Appeals because they were not the basis of Wedebrand's legal claims before that court.[3] As a result, Judge Zoss made no comment about those factual claims in his Report and Recommendation. Therefore, this objection to Judge Zoss's Report and Recommendation is also overruled.

---

[3]The court notes that neither Spies nor Martin were ever specifically asked during their testimony during the post-conviction relief hearing whether they informed Wedebrand about the elements of each charged offense. On the subject of juvenile waiver, Spies testified that he discussed the concept of juvenile court waivers and transfers with Wedebrand. Post-Conviction Tr. at 151-53. Martin testified that he discussed the seriousness and nature of the state charges Wedebrand was facing. Post-Conviction Tr. at 187-89. Martin also testified that he discussed with Wedebrand the motion to withdraw the motion he previously filed to transfer Wedebrand to juvenile court. Post-Conviction Tr. at 189.

### III. CERTIFICATE OF APPEALABILITY

Wedebrand must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability on these issues. *See Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir.), *cert denied*, 531 U.S. 908, 121 S. Ct. 254, 148 L. Ed. 2d 184 (2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir.), *cert. denied*, 525 U.S. 1007, 119 S. Ct. 524, 142 L. Ed. 2d 435 (1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998), *cert. denied*, 525 U.S. 1166, 119 S. Ct. 1083, 143 L. Ed. 2d 85 (1999); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Wedebrand has failed to make such a substantial showing. Therefore, with respect to these claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3).

### IV. CONCLUSION

The court accepts Judge Zoss's Report and Recommendation. Therefore, Wedebrand's petition for a writ of habeas corpus is **dismissed**. The court further orders that no certificate of appealability shall be issued for any of Wedebrand's claims.

**IT IS SO ORDERED.**

**DATED** this 20th day of January, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA